1-10-1-7-0-4, American Airlines v. Air State Morgan. Counsel, please. Good morning, Justices, Counsel. Dan Ugassi on behalf of the appellant, American Airlines. I'm here today to ask you to overturn the Circuit Court's decision confirming the Commission's decision, which affirmed the decision of the arbitrator in this case. While I hesitate to tell you I lost all the way up, you already know that. Yet we are confident we can obtain the relief we seek here. Specifically, we're asking you to overturn this decision on two grounds. One, an improper finding on causal connection. And two, and or an improper finding on temporary total disability. And while I was hesitant to tell you I've lost every step so far, after this last argument I think I'm a little more hesitant to tell you that I'm asking you to overturn the case on the manifest weight of the evidence. But I am. So on the issue of causal connection, I'm doing so because the arbitrator's decision that was affirmed and adopted by the Commission and just was confirmed in its entirety by the Circuit Court without any further statements is based upon speculation and conjecture, which this Court has said time and again cannot stand. I say it's based upon speculation and conjecture because the lower tribunals drew an inference that's not supported by the evidence in this case. Specifically, that this injured employee's hand was crushed or compressed during his accident and that led to his trigger finger. What about, you know, I understand that. What about the diagnosis of Dr. Driggs and the other doctor, Dr. Fernandez? Don't their records support that conclusion, though? Dr. Fernandez's records indicate a crushed injury. Dr. Driggs also states a crushed injury. The statement, though, that the petitioner's hand was actually crushed by him, him telling someone, my hand got crushed during this accident, doesn't appear until he goes and sees Dr. Fernandez almost a year and a half after the accident. Every other history that leads up to this, including the history given Dr. Driggs, whether Driggs calls it a crushed injury and applies an improper diagnosis or not, isn't in the records. As a matter of fact, in the consensual records, he states that it fell on his hand and then his hand went to the floor. Right. But in essence, are you not attacking the claimant's credibility? That seems to be the theme this morning. I mean, isn't the Commission charged with the responsibility of weighing the credibility and believability of the witnesses? Absolutely, Your Honor. And if the petitioner had testified at the time of trial that my hand was crushed during this accident, that it was smashed, that it was caught between this bag and the plane, I wouldn't be here today, trust me. That argument's going nowhere. But that's not his testimony. He says the bag's four feet in the air, it fell, it hit my hand. And those are the histories in every one of the medical records that leads up to this until the time he gets to Dr. Fernandez, almost 18 months later. What about the history of Dr. Badouri? I'm sorry? Who's Dr. Badouri? That is apparently, and I have to admit, unfortunately we did not get an opportunity to present a witness to explain the Texas system. It's my impression from the testimony that that is a doctor he chose down in Texas that he wanted to see. It was a chiropractor who apparently did provide some treatment and even discharged him himself. But, again, the history given to that doctor isn't of a smash or a crush. And I'm sure the justices... Wait a second. I don't know if that's accurate. The record establishes respondent, the claimant, told Dr. Badouri, quote-unquote, that a bag fell on his right arm wrist and he snatched his right arm from underneath the bag. Well, what's the context of that? If the bag just hit his hand in midair, it would have fallen to the floor. He wouldn't have had a chance to snatch his hand from underneath the bag. If he says, I had to snatch my hand from underneath the bag, doesn't that imply it was a crushing, it fell to the ground? Well, Your Honor, actually I took it to mean just the opposite. If I'm snatching my hand out from underneath, I got it out. It's falling, and I got it out of the way before it caught my hand between here and the table or the ground, as the case may be in this case. If I snatch it away, it never crushed me. The records, I mean, I... Well, again, you're right. It's subject to interpretation because it's not a definitive statement. You can read it both ways. But again, we're now into the era of the province of the commission, so to speak, aren't we? Well, except, Your Honor, this Court has said, and one of the justices here has said, I believe it was in first cash, that where there's a permissible inference both one way or another as to the existence or the nonexistence of a fact, it could go either way. You have to assume the nonexistence of the fact. But in this particular case, there's a record that shows the existence of the fact. These are not two inferences. Fernandez's record says there's a crushing injury. Yes. And it's plain and total. The history 18 months late. Well, that's credibility, and that's for the commission. In first cash, there was no... She said, I don't know what caused me to fall. I don't know. Now, you could infer that she fell on the air or whatever she claimed she fell on, or you could infer that she tripped on her own feet. And neither one is more probable than the other, but nobody testified to what happened. In this particular case, Fernandez's records say what happened. It's up to the commission to determine whether the 18-month delay affects its credibility, and they decided. Your Honor, I believe then we also get to the manifest weight, though, because there are multiple doctors here. It's not just one other doctor or his testimony. There are multiple doctors where he's given this history, and it never states it was crushed or anything. Well, does he give a history that's contrary to that? Yes. He states it was struck, it fell on, but it never crushed. No, but did he say it wasn't crushed? No, he does not definitively state it was not crushed. So really what we have here, of course, doctor, I mean, what is Dr. Fernandez's real statement here? Well, Dr. Fernandez's ultimate statement, after he's told it's crushed even, is that it's not causally connected. He said, in looking at all the evidence, I don't believe it's causally connected. Dr. Carroll states that, assuming the facts are correct, that he, in fact, sustained a crush injury, it may well have caused this compression, which then contributed to this trigger finger condition. Okay. So really, I mean, we can't ask a doctor unless he can show that the medical condition of the claimant can only arise out of a crush. All we're left with is the statement and claim of the claimant that there was a crushing incident, right? At the time of the, yes, when he talked to Dr. Fernandez, he made that statement. He made the statement that there was a crushing. Yes. But you're saying that's the only time he did it. That's the only time he states there was a crushing. All the other evidence, including his testimony at trial, don't say the first thing about his hand getting crushed or smashed. These are his statements about how what happened to him that are closer in time to the incident should be given more weight. Yes, we would assert that, yes, definitely. This is 18 months afterwards, and now he's using a new description for what happened to his hand. Which is even different than what he told Dr. Carroll, the doctor who ultimately opines causation, when he first saw him. It doesn't indicate a crush at all. It doesn't specifically deny it. I won't say that it does, but the record clearly reads that it just contused the hand. Where did Dr. Driggs get the idea that the claimant suffered a crushing contusion? Well, three months later, I'm not quite certain. Maybe because he was now, at that time, for the first time, complaining of symptoms not just on the dorsum side of the hand. He does have that one occasion where he complained on the palmar side as well. Maybe he assumed there was a crush, even though it wasn't in the record. Why would he assume? Well, because the complaints are now both on the back of the hand and the front of the hand, Your Honor. That's the only reason. That would lend credibility to the notion that there was, in fact, a crushing injury? I'm sorry? That would lend credibility to the notion that there was a crushing injury? It doesn't work in my favor. I completely agree. So you've got Driggs saying there's a crushing injury. Whether he was told that by the plaintiff or he states that because of the type of injury. And you've got Fernandez claiming that the claimant states that there was a crushing injury. So how do you win this case? Well, I think we look at the claimant's testimony, the history given to Concentra when he's first seen there, which I think is very clear that a crush injury did not occur, that his hand fell to the belly of the plane after it was hit and the bag had struck his hand. I think we look at the history given Dr. Baddouri and all the complaints of only radial dorsum, complaints to the backside of the hand when he's initially treated by everyone except for Dr. Driggs. And that's the history given after Driggs to Pilotowski and the rest of the doctors as well. And what about your argument on TTD, where it's been all the time on the causation? Right. The commission further found that the petitioner was temporarily and totally disabled from August 2nd through the date of the hearing in October, August 2nd, 2007 through October of 2008. And that was against the manifest way of the evidence at all. And the primary reason for that is we have a doctor, Dr. Pilotowski, who sees the petitioner August 2nd, 2007 and says, this gentleman is at maximum medical improvement. He has completed healing. The petitioner at that time does not see another doctor for this condition that we're aware of, that he testified to or that we have records for until he sees Dr. Carroll. And we have a subsequent indication that there may be a condition which needs a little more treatment. He was already placed at MMI. The court has stated time and again that once a person reaches maximum medical improvement, they're no longer entitled to temporary total disability benefits. The petitioner was supposed to go for an FCE and never did. He was also, I'd like you to keep in mind, seen by other doctors in this time, between the time of August 2nd, 2007 and the time he sees Dr. Carroll. A trigger finger is not an overly complex condition to treat, I guess, if need be. And the fact that he's seeing a doctor by his own admission for at least three to four months, he's under some doctor's care for a blood clot in his leg, to me would indicate that there was no condition existing at that time, that he has reached maximum medical improvement, which I guess, Your Honor, ties into the argument, too. How do we get to causation when we have this huge gap and no one treating or diagnosing any condition? Well, taking the latter issue first, would you agree that one of the issues we look to as to whether or not somebody's reached MMI is whether or not the person's released to return to work without restrictions? Did anybody here ever release the claimant to return to work without restrictions? No, because he didn't go for the FCE, Your Honor. And whether it's, while I will admit it is a factor, it is not determinative, I don't believe, and I don't think this Court has said that, of whether or not someone's at maximum medical improvement. The fact that there are a number of people who are permanently restricted in their work, or who are restricted in their work, who have reached maximum medical improvement. There's no further medical care that's going to improve their condition. It is what it is at the time. The big issue as to whether he could have returned to work or not, falls upon whether he ever went for this FCE or should have gone for it. The mere fact that he continued under restriction, though, does not defeat the facts of this case, which I believe clearly state, and are unrebutted, that he had reached maximum medical improvement at that time. Based on what? Dr. Pilotowski. When did he have surgery? When did he have surgery? I'm sorry? When did he have surgery? He didn't. What did Fernandez say about MMI and his condition? He thought the petitioner had reached, Fernandez thought he reached MMI from the accident back in April of 2007. Fernandez found no causal connection between the crushing injury and the event. He found that he reached MMI from the accident as he understood it. But he was also asked for the claimant's condition, the condition of the hand. Fernandez advised that he wouldn't reach MMI until two to three months after surgery. He didn't care, and he never had surgery. So obviously he couldn't have reached MMI for that injury under Fernandez's theory. Fernandez's whole theory that he reached MMI was based on no causal connection. But I'm not, I guess, Your Honor, Fernandez saw him for a condition that maybe possibly redeveloped, reoccurred. I don't know how to explain that. That's why we're, I'm sorry? What did Carroll say? What did Carroll say about what? MMI. MMI. I don't recall him addressing the issue directly, Your Honor. If he did, I missed it. I apologize. I was concentrating on Dr. Pilotowski, who did see him back in August of 2007, and said the man had reached maximal medical improvement. The petitioner's own testimony or statements to other doctors that he had seen Dr. Badouri, and Dr. Badouri had in fact discharged him by August 2, 2007. To me, that's all indicative of MMI. Even Dr. Driggs, who we point to for this contusion versus crush, Dr. Driggs indicated when he saw him on June 15, 2007, he thought the petitioner should be able to return to work in three weeks, but the petitioner didn't follow up with Dr. Driggs. He didn't want to see Dr. Driggs anymore. He chose Dr. Badouri instead. I think all that evidence points to a finding of MMI. Now, again, I believe my argument is supported by the fact that we now have this trigger finger that appears in March of 2008 that goes untreated by anyone for all this time, but even absent that, maybe the condition reoccurred. To find he's temporarily and totally disabled after doctors declared him an MMI for another 62 5-7 weeks for a trigger finger, it's beyond my imagination at least. I would ask that this Court overturn the Commission's decision, if not on causal connection, I believe it is against the manifest way of the evidence, but also on the TTD award alone. Thank you. Counsel, please. Hello again. Frank Kress on behalf of the appellee in this matter. Again, this is another matter that, as you pointed out, I believe is also a manifest weight case whereby the Commission, the final arbiter of issues of fact, opted to They adopted the opinion of Dr. Charles Carroll versus that of Dr. John Fernandez. We've got doctor versus doctor, and we've got a factual determination that was made that the appellee sustained an injury for which he was restricted from work for that period of TTD that was awarded and was in need of future medical treatment in the form of injections to treat his flexor tenosynovitis. It's a well-taken point that as early as June 15, 2007, this particular claimant was also diagnosed with a crush injury with resulting flexor tenosynovitis before any litigation started taking place in Illinois when he was still treating with his doctor in Texas. Petitioner's testimony was that a bag fell on his hand from a height of four feet. In the record, it's clear this bag was 106 pounds by the estimate of the claimant, and I think anyone that could look at this incident and say that that hand wasn't crushed underneath that bag is just grasping at something that's not quite there. The record is clear. A 106-pound bag fell on this gentleman's hand, and to argue that the opinion of Dr. Carroll is counter to the The Commission's decision to adopt the opinion of Dr. Carroll is counter to the manifest weight of the evidence because of terminate contusion versus crush is, I think, not something that would give that this Court should give much thought to. The claimant was also treating for this blood clot disorder, which counsel noted. However, he was not authorized to see any doctor of any kind. There's an explicit letter from the claims adjuster in the record that I've pointed in my brief explicitly denying any and all medical treatment and any temporary total disability benefits because this injured worker opted to pursue the rights of the Illinois Workers' Compensation Act, which she had a right to. I think that that should be something that this Court takes into consideration when weighing this decision it has. This respondent went out of its way to try and deny this gentleman medical care, and in response to that, several motions were filed at the Commission. I will spot every step of the way trying to get this gentleman additional medical care. Kennedy, what does it have to do with causation? It does not have anything to do with causation. What does it have to do with TDD? Because the argument has been made to this Court that there's such a long period of time, this gentleman should have been he was seeing a doctor. He should have been finding some way to treat that hand and get back to work. That's what has been argued to this Court when all along this respondent was denying that hand treatment specifically in writing. For the reasons I've laid out, because this is another manifest weight case, this Court should affirm and adopt the decision of the Commission as all issues in dispute before this Court are issues of fact subject to the manifest weight of evidence. Thank you, Counselor. Rebolo. Just quickly, Your Honor, on the issue of whether or not he was authorized, that's a State of Texas form that apparently the Texas Workers' Compensation Commission must require. To sit here and say that the company denied him all care and all treatment that entire time is outside the record. Petitions were filed. The fact that Petitioner's attorney failed to proceed on them is something of his choosing or his doing. I don't think you need to worry about us being led into that and having an impact on our decision. Okay. Thank you. Thank you. Court is adjourned.